# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 07-06449-JW |
| | Chapter 7 |
| Glo-Tex International, Inc, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court on the Petition for Relief filed by Delta Electrical Contractors of S.C., Inc., Crescent Bay Builders, LLC, and Crescent Bay Supply, LLC (collectively, "Petitioners") seeking authorization from the Chapter 7 Trustee ("Trustee") to pursue various causes of action against Lawrence O. Goldstein and Janice Goldstein ("Goldsteins"), which were pending in the South Carolina Court of Common Pleas ("State Court") when this bankruptcy case was filed. The Goldsteins are the former shareholders and officers of the debtor, Glo-Tex International, Inc. ("Debtor"). The Goldsteins object to the relief requested on the basis that the claims which Petitioners seek to pursue have been settled and a full release of the claims has been delivered to them by the Trustee in a bankruptcy adversary proceeding, Adv. Pro. No. 09-80063 (the "Adversary"). The Trustee filed no response to the Petition for Relief and made no appearance in this matter. At the hearing on the Petition for Relief, the Petitioners requested authorization from the Bankruptcy Court to pursue these causes of action in State Court.[1] Therefore, in consideration of this request, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52,

---

[1] The Court surmises that the State Court was reluctant to proceed without interpretation of the Settlement Order approved by the Bankruptcy Court.

which is made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[2]

### FINDINGS OF FACT

1. Petitioners contracted with Debtor to rebuild and expand Debtor's manufacturing facility, which was destroyed by fire in 2006. The insurance proceeds were paid to BLX as the first mortgage holder on the destroyed facility ("BLX"). Debtor was reimbursed for rebuilding costs from the insurance proceeds by BLX when Debtor provided BLX with evidence of the money it spent on the rebuild.

2. After not receiving payment for work performed and materials supplied to the facility, Petitioners filed a State Court action against Debtor and the Goldsteins on June 15, 2007. Their Amended Complaints were filed on July 27, 2010, and contained the following causes of action: (1) Breach of Contract, (2) Foreclosure of Mechanic's Lien, (3) Quantum Meruit, (4) Unjust Enrichment, (5) Promissory Estoppel, (6) Violation of S.C. Code Ann. 27-1-15, (7) Fraud, (8) Negligent Misrepresentation, (9) Constructive Fraud, and (10) a Veil Piercing Theory. The facts and claims alleged against the Goldsteins can be found in paragraphs 5 – 10 of the Amended Complaint and the Seventh, Eighth, Ninth and Tenth Causes of Action of the Amended Complaint.[3]

3. On November 21, 2007, Petitioners filed an involuntary Chapter 11 petition against Debtor. This Court entered its Order for Relief (Involuntary) Under Chapter 11 on January 2, 2008. The case was converted to a Chapter 7 case on March 12, 2008.

---

[2] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

[3] The Petitioners attached only a copy of the Amended Complaint filed by Delta Electrical Contractors of S.C., Inc. to the Petition for Relief. The parties do not dispute that the Amended Complaints filed by Crescent Bay Builders, LLC and Crescent Bay Supply, LLC are substantially similar to the Amended Complaint that was attached to the Petitions for Relief.

4. On April 23, 2009, the Adversary was filed by the Trustee against the Goldsteins, individually, for harm done to Debtor. The complaint included derivative causes of action for the following: (1) Turnover of an insurance policy that the Trustee asserted was property of the estate, (2) Breach of Contractual, Statutory and Fiduciary Duties, and Mismanagement, and (3) Negligence (collectively the "Trustee's Claims").

5. On September 11, 2009, the Trustee filed a Notice and Application for Settlement and Compromise of the Adversary pursuant to Bankruptcy Rule 9019 ("Notice") (Docket No. 7). The terms of settlement provided for the Trustee and the Goldsteins to equally divide the $65,892.08 cash surrender value of a life insurance policy. In exchange for the one-half interest in the policy, the Trustee agreed to release the Goldsteins from any and all claims held by the estate against them. The Notice specifically provided the following: "The release of the [Goldsteins] will include, but is not limited to, the claims asserted in the Complaint and *any other direct or derivative claims, or causes of action, whether known or unknown, held by the Debtor or the Chapter 7 estate of the Debtor against the Defendants, jointly or severally*." (emphasis added)

6. The settlement was approved by the Order Approving Settlement and Compromise on October 22, 2009 (Docket No. 9), which approved the terms of the settlement as set forth in the Notice. Petitioners acknowledge that they were aware of the terms of the settlement and that they are not challenging the sufficiency of the Notice.

7. The settlement was consummated and the Trustee delivered to the Goldsteins the release contemplated by the Notice.

8. Petitioners stipulated at the hearing on the Petition for Relief that several of the causes of action asserted in their State Court complaints are now moot by virtue of the

3

settlement. The parties agree that the causes of action asserted against Debtor have been settled by the Trustee. However, Petitioners contend that the Seventh, Eighth, Ninth, and Tenth Causes of Action in the Amended Complaint (collectively the "State Court Claims") remain viable because they were personal in nature and therefore could not have been settled by the Trustee.

## CONCLUSIONS OF LAW

The issue presented is whether the Petitioners' State Court Claims were included within the scope of the claims settled by the Trustee and the Goldsteins. The resolution of this issue depends on whether the State Court Claims represent derivative or direct actions, which is determined pursuant to South Carolina law. See In re Greenwood Supply Company, 295 B.R. 787 (Bankr.D.S.C. 2002). In discussing the distinction between a derivative cause of action and a direct action, this Court stated the following in Greenwood:

> A derivative action is brought when a corporation suffered an injury from actionable wrongs committed by its officers and directors. The corporation or its shareholders can bring the cause of action on the corporation's behalf. If any relief is granted, it goes to the corporation; shareholders cannot recover the damages in their individual capacities because their loss is the indirect result of the injury to the corporation. See Ward v. Griffin, 295 S.C. 219, 367 S.E.2d 703 (S.C. App. 1988). In contrast, a direct action is one where misconduct by the management of a corporation causes a particular loss to an individual shareholder. See id.

Id. As a general rule, the right to pursue a derivative action is part of the bankruptcy estate under 11 U.S.C. § 541. Id. However, "[t]he personal claims of creditors are not property of the estate. A claim is personal if the claimant itself is harmed and no other claimant or creditor has an interest in the cause." In re Derivium Capital, LLC, 380 B.R. 392, 401-02 (Bankr. D.S.C. 2007) (internal citations omitted). Therefore, if the Court determines that the State Court Claims are derivative actions, then the Trustee would have the exclusive right to

4

bring these claims and also the power to settle such claims. To the extent the State Court Claims constitute direct actions, the Trustee would not have the power to settle these claims and the Petition should be granted to allow Petitioners to pursue these claims in State Court. See id. at 402 ("Without standing to bring a creditor's personal claim, it would necessarily follow that a trustee would lack authority to settle such a claim."). The Petitioners bear the burden of demonstrating that the Trustee did not have the authority to settle the State Court Claims.

Petitioners rely solely on the allegations made in the Amended Complaint to support the Petition. The procedure for determining a petition seeking this type of relief does not appear to be specifically provided by the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure. However, similar relief was sought by creditors in In re Bostic Construction, Inc., 435 B.R. 46, 59-60 (Bankr. M.D.N.C. 2010), in which the bankruptcy court applied a Rule 12(b)(6) standard to examine a creditor's state court causes of action and determine whether they were barred by a trustee's settlement. The Court agrees with the approach used in Bostic. In order to determine whether the State Court Claims, as pled, are personal or derivative claims, the Court should examine the nature and sufficiency of the allegations of the complaint without determining the validity of the claims.

In the Seventh Cause of Action, Petitioners included multiple allegations of the Goldsteins' individual and personal acts against Petitioners, including the following:

> *Defendants L. Goldstein and J. Goldstein* after repeated promises to pay [Petitioners] and in order to induce [Petitioners] to continue to supply labor, materials and equipment, *represented to [Petitioners]* that *they* had the funds to pay for the labor, materials and equipment furnished by [Petitioners] on the Project, and it was understood by [Petitioners] that [they] would be paid. In fact, *L. Goldstein and J. Goldstein knew* Glo-tex

5

> did not have the funds to pay [Petitioners] or other subcontractors for the rebuild and expansion of its facility.
>
> …
>
> *L. Goldstein and J. Goldstein intended* for [Petitioners] and other subcontractors to continue to supply labor, materials and equipment in reliance *upon Defendants' representations* that Defendants had the funds to pay [Petitioners]. *L. Goldstein and J. Goldstein knew* their representations were false and that [Petitioners] were relying on the representations.
>
> …
>
> Upon information and belief, *L. Goldstein and J. Goldstein were aware* that [Petitioners were] supplying labor, materials and equipment far in excess of that required to simply rebuild the facility after the explosion. *L. Goldstein and J. Goldstein solicited, encouraged and procured [Petitioners]* to supply and continue to supply labor, materials, and equipment when L. Goldstein and J. Goldstein knew that Glo-tex did not have the funds to pay.
>
> (emphasis added)

On the face of the Amended Complaint, there appear to be sufficient allegations of acts directly participated in by the Goldsteins against Petitioners to state a plausible claim against the Goldsteins in their individual capacities.[4] Under South Carolina law, an officer or director of a corporation can be held personally liable for any tortuous acts he participated in or directed. BPS, Inc. v. Worthy, 608 S.E.2d 155 (S.C. Ct. App. 2005). An officer who actively participates in the fraud cannot escape personal liability on the ground that the officer was acting for the corporation. Further, the fact that the officer did not personally benefit from the transaction is immaterial. 3A FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 1143 (2010); see also Polonetsky v. Better Homes Depot, Inc., 97 N.Y.2d 46, 769 N.E.2d 1274 (2001) (stating that, in actions for fraud, corporate officers and directors may be held individually liable if they participated in or had knowledge of the fraud, even if they did not stand to gain personally). The Court notes

---

[4] The Court notes that the State Court would be left to resolve contests surrounding the facts, the merits of the claim, and any applicable defenses.

that the same conduct by directors can produce both derivative and individual claims.[5] In re Bostic Construction, Inc., 435 B.R. at 64. Based on its review of these allegations, the Court finds that, to the extent Petitioners acted in reliance on misrepresentations made by the Goldsteins to them, the Petitioners may have been directly injured and therefore, such a claim would belong directly to them and could be pursued in State Court. See In re Seven Seas Petroleum, 522 F.3d. 575, 587 (5th Cir. 2008) (holding that claims for conspiracy to defraud and aiding and abetting fraud, which were based upon allegations of misrepresentations and material reliance by the claimants on those misrepresentations, alleged a direct injury to the claimants and thus were not property of the estate); In re Bostic Construction, Inc., 435 B.R. at 68 (holding that claims for constructive fraud, aiding and abetting constructive fraud and violations of the North Carolina RICO Act against former officers of the debtor were personal claims that were not included in the trustee's settlement with the officers).

To the extent that the Seventh Cause of Action alleges that the Goldsteins converted corporate funds to their own use through the diversion of monies paid to Debtor in trust for the payment of subcontractors on the project, any claim based upon this conduct would be barred since it would constitute a derivative action which has been settled by the Trustee. Unlike the Goldsteins' alleged misrepresentations, which caused Petitioners particular harm to the extent they advanced goods and services in reliance upon those misrepresentations, the alleged conversion of corporate funds by the Goldsteins would have caused injury to the Debtor and all of its creditors generally, by diminishing the amount of funds available to pay many creditors, not just Petitioners. Petitioners' injury would thus derive from an injury to

---

[5] In some cases, the court may be asked to stay the litigation of the individual claims while the trustee proceeds on derivative claims held by the estate. See id. (citing cases). However, in this case, the Trustee has settled all of the derivative claims against the Goldsteins, so a stay would be unnecessary.

7

Debtor, and a claim against the Goldsteins based on this conduct would belong exclusively to the estate.  See Davis v. Hamm, 300 S.C. 284, 387 S.E.2d 676 (Ct. App. 1989) (declaring that a claim for misappropriation of corporate property is a derivative claim under South Carolina law).  Since the Trustee has settled all of the estate's claims against the Goldsteins, the Petitioners lack standing to pursue this cause of action to the extent that it based upon a conversion of corporate property.

The Eighth and Ninth Causes of Action, Negligent Misrepresentation and Constructive Fraud, are based upon allegations of direct misrepresentations by the Goldsteins regarding the availability of funds to pay Petitioners for the labor and materials furnished to Debtor, and allegations that Petitioners supplied labor and materials to the Debtor in reliance on those representations and suffered actual, consequential and special damages as a result of their reliance. Specifically, Petitioners made the following allegations in the Eighth Cause of Action:

> Defendants represented to [Petitioners], and it was understood by [Petitioners], that funds were available to pay [Petitioners] for the labor and materials [they] furnished on the Project.  Further, Defendants solicited and encouraged [Petitioners] to continue to supply labor and materials beyond the original scope, with full knowledge that they did not have the funds to pay [Petitioners] on the Project.
> …
> Defendants informed [Petitioners] that they would secure funds from a closing that was to take place in March of 2007 and would pay [Petitioners] the monies owed it for the labor and materials furnished on the Project, when in fact, the closing did not take place and the Defendants knew they did not have the funds to pay [Petitioners].
> …
> Defendants negligently misrepresented to [Petitioners] that they had the funds to pay for the labor and materials furnished on the Project.

In the Ninth Cause of Action, Petitioners included the following allegations:

> Defendants made misrepresentations to [Petitioners], including misrepresentations concerning the funds available to pay [Petitioners] for the labor and materials on the Project.
>
> Defendants' representations were false and material.
>
> Upon information and belief, Defendants made these representations either with knowledge of their falsity or with reckless disregard for the truth.
>
> Upon information and belief, Defendants intended for [Petitioners], and possibly others, to act upon and in reliance upon these representations.

Since the term "Defendants" is defined in the Amended Complaint as including both the Goldsteins and Debtor, the Court finds these allegations are sufficient to state a claim against the Goldsteins in their individual capacities. The Court further finds that, to the extent that the proof indicates that Petitioners acted in reliance on misrepresentations made to them by the Goldsteins personally, the Petitioners may have been directly injured and this claim would belong directly to them and could be pursued in State Court. See id. (holding that claims based upon allegations of negligent misrepresentations and material reliance on those misrepresentations alleged a direct injury to the claimants and thus belonged solely to them).

The Tenth Cause of Action, Declaratory Judgment, appears to be based upon a veil-piercing or alter ego claim. Petitioners allege that the Goldsteins had such control of Debtor that they completely dominated Debtor's finances, policies, and business practices, such that Debtor was merely the instrument of the Goldsteins, and that the Goldsteins used this control to commit fraud and other wrongful acts, causing damages to Debtor and preventing Debtor from having sufficient assets to pay Petitioners.

Under South Carolina law, "an attempt to pierce the corporate veil is not itself a cause of action but rather a means of imposing liability on an underlying cause of action."

Drury Dev. Corp. v. Found. Ins. Co., 380 S.C. 97, 102, 668 S.E.2d 798, 801 (2008). "South Carolina law is clear that [a party] attempting to pierce the corporate veil must state a claim against the corporate entity in order to proceed on a veil piercing theory[,]" although "a judgment against the corporation is not a pre-requisite" to pursuing a veil-piercing claim. Id. at 102-103, 668 S.E.2d at 801-802 (internal citations omitted). The test to be applied under state law is whether the claim against the corporation can survive a motion to dismiss. Id. at 103, 668 S.E.2d at 802. The Petitioners have stipulated that their remaining causes of action against Debtor are moot by virtue of the settlement with the Trustee. Therefore, there does not appear to be an underlying cause of action against Debtor upon which Petitioners' veil piercing claim can proceed.

Even if there was an underlying cause of action upon which Petitions could proceed, the allegations of the Amended Complaint, if true, indicate that the Goldsteins' alleged misuse of control caused harm to Debtor and that any injury to Petitioners derived from the harm caused to Debtor. Based on the allegations of the Amended Complaint, the Court finds that the Tenth Cause of Action is a derivative action. See In re Greenwood Supply Co., 295 B.R. 787, 795 (Bankr. D.S.C. 2002) ("A derivative action is brought when a corporation suffered an injury from actionable wrongs committed by its officers and directors."); see also In re Bostic Construction, Inc., 435 B.R.46, 62 (Bankr. M.D.N.C. 2010) (stating that "where fraud or negligent mismanagement of a corporation's business by its directors has resulted in a loss to the corporation and its creditors generally, the right of action belongs to the corporation"). Since derivative actions belong to the estate, the Trustee has full authority over such actions, including the ability to settle and release such claims. See Steyr-Daimler-Puch of America Corp. v. Pappas, 852 F.2d 132, 136 (4th Cir.

Document    Page 11 of 12

1988) (holding that an alter ego claim against the debtor's corporate insiders was property of the estate and thus the trustee had full authority over such claim).  For the foregoing reasons, the Court finds that any veil piercing or alter ego claim was encompassed within the settlement and release of claims executed by the Trustee and therefore, the Petition for Relief should be denied with respect to the Tenth Cause of Action.

Lastly, the Goldsteins argue that Petitioners' claims overlap with the Trustee's claims and therefore Petitioners lack standing under the Fourth Circuit's decision in National Am. Ins. Co. v. Ruppert Landscaping Co., which held that a creditor lacked standing to bring claims in district court where its claims shared the same underlying focus and were similar in object and purpose to claims that the trustee could bring in bankruptcy court. 187 F.3d 439 (4th Cir. 1999).  However, National addressed a creditor's pursuit of claims during the course of the bankruptcy case before the trustee had determined whether to pursue or abandon similar claims and did not address the pursuit of direct claims by creditors following the trustee's settlement of all causes of action belonging to the estate.  Certainly, actions by individual creditors that are very similar in object and purpose to a trustee's cause of action should take a back seat while those claims are pursued by the trustee in order to eliminate wasteful and competitive litigation, but individual creditors should not be precluded from pursuing direct actions once the trustee has resolved or abandoned similar causes of action belonging to the estate.  The Court further notes that the Petitioners' direct claims arising from misrepresentations made by the Goldsteins to the Petitioners do not appear to be similar in object and purpose to the claims brought by the Trustee against the Goldsteins in the adversary proceeding, since the Trustee's claims do not appear to have been based upon allegations of direct misrepresentations to creditors.

## **CONCLUSION**

Based on the foregoing, the Court concludes that Trustee's settlement does not extinguish or release Petitioners' direct causes of action against the Goldsteins. Therefore, Petitioners' Petition for Relief is granted as to their request for authorization to pursue the Seventh, Eighth and Ninth Causes of Action in State Court, except as limited by this Order. The Petition for Relief is denied with respect to the Tenth Cause of Action.

**AND IT IS SO ORDERED.**


**FILED BY THE COURT**
**11/30/2010**



*[signature: John E. Waites]*

Chief US Bankruptcy Judge
District of South Carolina

Entered: 11/30/2010